DIANA CLINE EBRON, ESQ.
Nevada Bar No. 10580
E-mail: diana@KGELegal.com
JACQUELINE A. GILBERT, ESQ.
Nevada Bar No. 10593
E-mail: jackie@KGELegal.com
KAREN L. HANKS, ESQ.
Nevada Bar No. 9578
E-mail: karen@KGELegal.com
KIM GILBERT EBRON
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139
Telephone: (702) 485-3300
Facsimile: (702) 485-3301
*Attorneys for SFR Investments Pool 1, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BANA HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP,<br><br>Plaintiff,<br><br>vs.<br><br>DESERT PINE VILLAS HOMEOWNERS ASOCIATION; SFR INVESTMENTS POOL 1, LLC; and ALESSI & KOENIG, LLC,<br><br>Defendants. | Case No. 2:16-cv-00725-JCM-NJK<br><br>**SFR INVESTMENTS POOL 1, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING A PURE ISSUE OF LAW: APPLICATION OF THE RETURN DOCTRINE POST-*BOURNE VALLEY*** |
| SFR INVESTMENTS POOL 1, LLC,<br><br>Counter/Cross Claimant,<br><br>vs.<br><br>BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BANA HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP; and JANET ROBITAILLE, an individual,<br><br>Counter/Cross Defendants. | |

SFR Investments Pool 1, LLC ("SFR") moves this Court for partial summary judgment pursuant to FRCP 56 and LR 56-1 on a pure legal issue: the application of the Return Doctrine

- 1 -

post-*Bourne Valley* on Bank of America, N.A.'s ("Bank's") affirmative defense that its due process rights were violated because NRS Chapter 116's "notice scheme" is facially unconstitutional. Through this motion, SFR seeks an order that post-*Bourne Valley*, under the Return Doctrine, NRS Chapter 116's "notice scheme" "returns" to its 1991 version. This motion is based on the following memorandum of points and authorities, the pleadings and papers on file herein and any oral argument this Court should entertain.

**MEMORANDUM OF POINTS & AUTHORITIES**

### I.  INTRODUCTION

*Bourne Valley* determined that NRS Chapter 116's "'opt-in' notice scheme" was facially unconstitutional. *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154, 1156 (9th Cir. 2016). This determination came without any instructions about what happens next, aside from a terse sentence that reads, "We therefore VACATE the district court's judgment and remand for proceedings consistent with this opinion." *Id.* at 1160. No further guidance is provided, no additional insights are offered; whatever happens next—at least in Nevada's *federal* courts[1]—is to be "consistent with" *Bourne Valley*.

This Motion addresses how this Court can be "consistent with" *Bourne Valley*'s conclusion that NRS Chapter 116's "notice scheme" is unconstitutional. It does so by requesting partial

---

[1] If Nevada's Supreme Court rejects *Bourne Valley*'s construction of 116.31168(1), then the Ninth Circuit must follow Nevada's highest court; *Bourne Valley* would not be binding. *United States v. Swisher*, 771 F.3d 514, 524 (9th Cir. 2014); *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1106 n.6 (9th Cir. 2007); *Rotec Indus., Inc. v. Mitsubishi Corp.*, 348 F.3d 1116, 1122 n.3 (9th Cir. 2003); *Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 903 (9th Cir. 2000); *Owen v. United States,* 713 F.2d 1461, 1464 (9th Cir.1983) (Ninth Circuit's interpretation of Nevada law is "only binding in the absence of any subsequent indication from the [Nevada] courts that our interpretation was incorrect."). The Ninth Circuit has been blunt about this point, "a state supreme court can overrule us on a question of state law," *Henderson v. Pfizer, Inc.*, 285 F. App'x 370, 373 (9th Cir. 2008), and "we are required to follow intervening decisions of the [Nevada] Supreme Court that interpret state law in a way that contradicts our earlier interpretation of that law." *Bonilla v. Adams*, 423 F. App'x 738, 740 (9th Cir. 2011). After all, "[i]t is solely within the province of the state courts to authoritatively construe state legislation." *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1146 (9th Cir. 2001); *see also O'Brien v. Skinner*, 414 U.S. 524, 531 (1974) ("It is not our function to construe a state statute contrary to the construction given it by the highest court of a State."); *High v. Ignacio*, 408 F.3d 585, 590 (9th Cir. 2005) ("This court accepts a state court ruling on questions of state law.").

- 2 -

summary judgment on the following pure issue of law: ***Under the Return Doctrine, NRS Chapter 116's "notice scheme" "returns" to its 1991 version.***

Pursuant to the Return Doctrine, "when a statute is declared unconstitutional, it has no effect and the prior governing statute is revived." *We the People Nev. ex rel. Angle v. Miller*, 192 P.3d 1166, 1176 (Nev. 2008). Consistent with the Return Doctrine, *Bourne Valley*'s declaration of unconstitutionality means that 116's "notice scheme" "returns" to its 1991 version, a version that is constitutional. As is explained below, a "return" to the 1991 "notice scheme" not only helps this Court be "consistent with" *Bourne Valley*, but it also eliminates the Bank's affirmative defense that Chapter 116 is facially unconstitutional. At bottom, SFR asks this Court to apply the 1991 version of 116's "notice scheme."

This Court should grant SFR's motion for partial summary judgment and determine that under the Return Doctrine, NRS Chapter 116's "notice scheme" "returns" to its 1991 version, thereby eliminating the Bank's aforementioned affirmative defense.

## II.   LR 56-1 STATEMENT OF UNDISPUTED FACTS

Since this motion for partial summary judgment concerns a pure issue of law, "the following facts . . . are provided only as background and do not bear on the legal issue presented in the motion." *FedEx Corp. v. United States*, No. 08–cv–2423–SHM, 2009 WL 2032905, at *1 (W.D. Tenn. June 9, 2009).

1. The Bank filed its Complaint on April 1, 2016, alleging that "Chapter 116 of the Nevada Revised Statutes' scheme of HOA super-priority non-judicial foreclosure violates BANA's procedural due process rights under the state and federal constitutions." ECF No. 1, 7:8-9 (¶34).

2. According to the Complaint, a deed of trust assignment to the Bank was recorded in 2012. *Id.* at 4:13-15 (¶15) (noting that assignment's instrument number was ***2011***10070000152).

3. The Bank also averred that the Association's sale occurred December 5, 2012. *Id.* at 6:11 (¶27).

4. SFR filed a Counterclaim, prompting the Bank to raise several affirmative defenses, one of which was entitled "Due Process—Facially Unconstitutional Provisions," which asserted

- 3 -

that "NRS Chapter 116 is facially unconstitutional because its 'opt-in' notice provisions do not mandate reasonable and affirmative steps be taken to give actual notice to a record lien holder before depriving that lien holder of its property rights, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution and of the Nevada Constitution." ECF No. 20, 10:9-14 (Twentieth Affirmative Defense).

### III.   LEGAL STANDARD

FRCP 56(a) authorizes motions for partial summary judgment, which identify "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." FRCP 56(a). A court "shall grant [partial] summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* Such motions can be brought to resolve a pure issue of law. *FTC v. AMG Serv., Inc.*, No. 2:12–cv–00536–GMN–VCF, 2013 WL 7870795, at *4 n.6 (D. Nev. July 16, 2013) (collecting decisions that granted motions for partial summary judgment on pure issues of law).[2] For example, "choice of law" is a pure issue of law that can be disposed of through partial summary judgment. *Flintkote Co. v. Aviva PLC*, 177 F. Supp. 3d 1165, 1172 (N.D. Cal. 2016) ("Choice of law determinations, as well as contract interpretation issues, are pure legal questions well-suited to summary judgment.").

A court's choice about which law to apply is a pure issue of law, subject to *de novo* review and capable of being resolved through a motion for partial summary judgment. *Shannon-Vail Five*

---

[2] *See also Ferrell v. BGF Global, LLC*, No. 15–cv–404–D–TDD, 2016 WL 4402050, at *1 (W.D. Okla. Aug. 18, 2016) ("The issue before the Court presents a pure question of law appropriate for resolution by [partial] summary judgment."); *FedEx Corp. v. United States*, No. 08–cv–2423–SHM, 2009 WL 2032905, at *3 (W.D. Tenn. June 9, 2009) ("Plaintiff seeks [partial] summary judgment on the purely legal question of the tests the IRS should have applied to determine whether FedEx was eligible for research tax credits for 'qualified research expenses.'"); *Klass v. Fid. & Guar. Life Ins. Co.*, No. CIV 04–2337–PHX–RCB, 2009 WL 886874, at *5 (D. Ariz. Mar. 31, 2009) ("There is no need to repeat the entire body of summary judgment case law which has developed since then, especially, as will be seen, these motions turn on purely legal issues, making them proper for resolution pursuant to Fed. R. Civ. P. 56."); *Yeager v. Chertoff*, No. C06–0740–RSM, 2006 WL 4673439, at *4 (W.D. Wash. Nov. 13, 2006) ("As a threshold matter, the Court agrees with defendant that the instant motion raises a pure question of law for the Court, and therefore, summary judgment is appropriate."); *Claitt v. Newcomb*, No. 89–cv–00788–R–JRS, 1990 WL 303956, at *2 (E.D. Va. Aug. 10, 1990) ("Newcomb's motion asks the Court to decide purely legal issues, and the Court has the power to do so at the summary judgment stage.").

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

*Inc. v. Bunch*, 270 F.3d 1207, 1210 (9th Cir. 2001); *Jenkins v. Whittaker Corp.*, 785 F.2d 720, 724 (9th Cir. 1986) ("Whittaker argues that the district court erred in applying Hawaii law. Choice of law is a question of law reviewable *de novo* by this court.").

Likewise, motions for partial summary judgment can target a litigant's defenses. *Int'l Ship Repair & Marine Serv., Inc. v. St. Paul Fire & Marine Ins. Co.*, 944 F. Supp. 886, 891 (M.D. Fla. 1996) ("In this case, partial summary judgment may be used by the Court to dispose of affirmative defenses. The effect being that if the moving party sustains its burden, then the affirmative defenses will be struck by the Court.").

SFR asks this Court to choose between the 1993 and 1991 versions of Chapter 116's "notice scheme." Indeed, this Motion's pure issue of law resembles the "choice of law" context; both involve a court's decision about which law to apply.  In doing so, SFR has raised a pure issue of law amenable to partial summary judgment which will eliminate the Bank's affirmative defense that Chapter 116 is facially unconstitutional.

### IV.    LEGAL ARGUMENT

One of this case's central issues is establishing how this Court can be "consistent with" *Bourne Valley*'s conclusion that 116's "notice scheme" is unconstitutional. This legal issue concerns what courts are supposed to do with laws that have been declared to be unconstitutional. Such an issue is hardly novel; for years, state and federal courts have confronted supposedly unconstitutional laws. And they have done so by using a traditional doctrine, a "fundamental principle of statutory construction,"[3] a "general rule,"[4] a "general principle"[5]: The Return Doctrine.

**A. Under the Return Doctrine, when a Statutory Amendment is Declared Unconstitutional, the Statute "Returns" to its Pre-Amendment Version.**

---

[3] *United States v. Tufti*, 542 F.2d 1046, 1047 (9th Cir. 1976); *Conlon v. Adamski*, 77 F.2d 397, 399 (D.C. Cir. 1935) ("The elementary rule of statutory construction is without exception that a void act cannot operate to repeal a valid existing statute, and the law remains in full force and operation as if the repeal had never been attempted.") (citing *Frost v. Corp. Comm'n of Oklahoma*, 278 U.S. 515, 526-27 (1929)).
[4] *State v. Bloss*, 637 P.2d 1116, 1130 (Haw. 1982); *Ross v. Goshi*, 351 F. Supp. 949, 954 (D. Haw. 1972); *Rowland v. State*, 311 S.W.2d 831, 832 (Tex. Crim. App. 1957).
[5] *In re Op. of the Justices*, 168 N.E. 536, 538 (Mass. 1929).

- 5 -

Under the Return Doctrine, "when a statute is declared unconstitutional, it has no effect and the prior governing statute is revived." *We the People*, 192 P.3d at 1176.[6] So, if a statutory amendment is deemed unconstitutional, then the statute "returns" to its pre-amendment version. This doctrine has a rich tradition in state and federal courts. For example, Nevada's Supreme Court has followed the Return Doctrine for over 100 years.[7] Nevada is not alone; other states rely on the Return Doctrine, including: Alabama, Arkansas, California, Hawaii, Idaho, Illinois, Indiana, Iowa, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, South Carolina, South Dakota, Tennessee, Texas, Washington, and Wyoming.[8] But the Return Doctrine is not the exclusive product of state jurisprudence. Far from it; United States Courts of Appeals[9]

---

[6] *In re Sullivan*, 795 N.E.2d 392, 397 (Ill. App. Ct. 2003) ("Accordingly, as sections 607(b)(1) and (b)(3) are unconstitutional, the effect is that the law returns to how it was before the enactment of the statute.") (internal citation omitted).

[7] *We the People*, 192 P.3d at 1176; *Finger v. State*, 27 P.3d 66, 84 (Nev. 2001) ("All prior versions of the statutes amended or repealed by S.B. 314 remain in full force and effect."); *Clark Cnty. Bd. of Cnty. Comm'r v. City of Las Vegas*, 628 P.2d 1120, 1122-23 (Nev. 1981) ("The unconstitutional specification did not appear in the original enactment of 1973, but was added in the amendments of 1977 and 1979. Because these specifications in the plan for apportionment of expenses, as amended, are unconstitutional, the law as it existed prior to the amendments will be controlling.") (internal citation omitted); *Johnson v. Goldman*, 575 P.2d 929, 930 (Nev. 1978) ("Because 1977 Nev.Stats. ch. 398, s 2 (codified as NRS 1.240) is unconstitutional, the procedures which previously governed judicial recusal by affidavit, set forth in 1975 Nev.Stats. ch. 415, s 1, paras. 5, 6 & 7 (previously codified as NRS 1.230(5), (6) & (7)) and 1957 Nev.Stats. ch. 46, s 2 (previously codified as NRS 1.240) and which were purportedly repealed by 1977 Nev.Stats. ch. 398, remain in effect."); *State ex rel. Clover Valley Lumber Co. v. Sixth Jud. Dist. Ct.*, 83 P.2d 1031, 1034 (Nev. 1938) ("Being thus of the opinion that the 1937 amendment is unconstitutional, can we then say that the 1931 amendment heretofore held to be constitutional is still in force and effect? We believe it is."); *State v. Raymond*, 1876 WL 4538, at *5, 11 Nev. 98, 106 (Nev. 1876) ("As the jury law of 1875, under which the court acted in impaneling the jury, was unconstitutional, although at the time of the trial of the case it had not been so declared by this court, the proceedings should have been conducted under the law as it existed prior to the passage of the act of 1875."); *State v. McClear*, 1876 WL 4526, at *17, 11 Nev. 39, 67 (Nev. 1876) ("As the effect of our decision will be to leave in full force the sections of the law of 1861, which the act under consideration attempted to amend and repeal, and as it is there provided that a juror may be challenged for implied bias for having formed or expressed an unqualified opinion or belief that the prisoner is guilty or not guilty of the offense charged, it is unnecessary to decide what expression of opinion would actually disqualify a juror.").

[8] For the sake of readability, the authorities in support of this sentence are located *infra* note 20.

[9] *LaRoque v. Holder*, 650 F.3d 777, 791 (D.C. Cir. 2011) ("And the general rule is 'that a void act cannot operate to repeal a valid existing statute,' meaning that the existing statute 'remains in full

- 6 -

and the United States Supreme Court[10] have embraced the Return Doctrine. So much so that the Ninth Circuit has touted it as a "fundamental principle of statutory construction . . . ." *United States v. Tufti*, 542 F.2d 1046, 1047 (9th Cir. 1976). Likewise, United States District Courts have applied the Return Doctrine to laws that have been declared to be unconstitutional.[11] And they have done

---

force and operation as if the repeal had never been attempted.'") (internal citation omitted); *Abcarian v. McDonald*, 617 F.3d 931, 939 n.7 (7th Cir. 2010) (following Illinois rule that invalidation of statutory amendment restores previous version of statute) (internal citations omitted); *McCoy v. Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737, 744 (8th Cir. 2010) (relying on Arkansas law for proposition that "When a provision is struck down as unconstitutional, 'it is treated as if it had never been passed.' . . . Thus, the law reverts back to what it was prior to the passage of the Civil Justice Reform Act, under which the jury could not apportion the fault of nonparties.") (internal citations omitted); *Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, (6th Cir. 2002) ("The rule in Ohio has long been that when a statute is held to have been unconstitutional as of its enactment, that statute is void *ab initio*."); *Tufti*, 542 F.2d at 1047 ("In *Cleveland* we expressly purported to preserve the vitality of Section 1153 as it read before 1966. In so doing, we applied the fundamental principle of statutory construction that 'a void act cannot operate to repeal a valid existing statute . . . .'") (internal citations omitted); *United States v. Cleveland*, 503 F.2d 1067, 1072 (9th Cir. 1975) ("Nothing in our opinion forecloses a new indictment based on 18 U.S.C. § 1153 as it read prior to the amendments that have been constitutionally invalidated."); *Conlon*, 77 F.2d at 399 ("The elementary rule of statutory construction is without exception that a void act cannot operate to repeal a valid existing statute, and the law remains in full force and operation as if the repeal had never been attempted.") (internal citation omitted).

[10] *Frost v. Corp. Comm'n of Oklahoma*, 278 U.S. 515, 526 (1929) ("But since the amendment is void for unconstitutionality, it cannot be given that effect, 'because an existing statute cannot be recalled or restricted by anything short of a constitutional enactment.'"); *Truax v. Corrigan*, 257 U.S. 312, 342 (1921) ("The exception introduced by amendment to paragraph 1456 proving invalid, the original law stands without the amendatory exception.").

[11] *LaRoe v. Cassens & Sons, Inc.*, 472 F. Supp. 2d 1041, 1046 n.1 (S.D. Ill. 2006) (version of Illinois statute that "was in effect before" unconstitutional amendment "is applicable to this case."); *Caterpillar, Inc. v. Usinor Industeel, Corp.*, 393 F. Supp. 2d 659, 685 (N.D. Ill. 2005) ("If an act is unconstitutional in its entirety, the state of the law is as if the act had never been passed. . . . The law in force is the law as it was before the adoption of the unconstitutional amendment.") (internal citations omitted); *Stewart v. Waller*, 404 F. Supp. 206, 215 (N.D. Miss. 1975) ("Because unconstitutional, the void 1962 statute cannot have repealed or amended a valid prior enactment, and the pre-1962 statutory law governing aldermanic elections remains in effect as if Sec. 21-3-7 had never been enacted.") (internal citations omitted); *Ross*, 351 F. Supp. at 954 ("The court, in holding MCO 697 unconstitutional leaves section 3(a)(4) as it was prior to the 1971 amendment, that is, as originally enacted by MCO 308. It is a general rule of application that, where an act purporting to amend and re-enact an existing statute is void, the original statute remains in force."); *Weissinger v. Boswell*, 330 F. Supp. 615, 625 (M.D. Ala. 1971) ("Since Section 17(1) is unconstitutional in violation of Section 70 of the Alabama Constitution, Title 51, Section 17, which purported to have been repealed by Section 17(1), remains in full force."); *see also PEST Comm. v. Miller*, 648 F. Supp. 2d 1202, 1210 (D. Nev. 2009) ("The Nevada Supreme Court agreed, invalidated NRS 295.056(3) as amended in 2007, and ordered the Secretary of State to accept the

KIM GILBERT EBRON
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

so regardless of whether the law is enacted by Congress, a state legislature, or a municipality.[12]

Notably, it is no accident that so many courts have used the Return Doctrine. It is not mere chance that accounts for the doctrine's vitality, or for the ever-increasing number of years that it has been invoked. Instead, the doctrine's widespread and longstanding use is caused by its simplicity, its capacity to provide courts with clear instructions about what to do with a statute—federal or state—that has been determined to be unconstitutional. Again, those instructions are: If a statutory amendment is deemed unconstitutional, then the statute "returns" to its pre-amendment version. And so, this doctrine tells courts how to be "consistent with" judicial decrees of unconstitutionality; when the Ninth Circuit strikes a statute down, the Return Doctrine tells district courts what to do next. *Tufti*, 542 F.2d at 1047. Such is the case here. SFR will now explain how the Return Doctrine helps this Court be "consistent with" *Bourne Valley*.

**B. The Return Doctrine Shows this Court how to be "Consistent with" *Bourne Valley*.**

In order to see how the Return Doctrine helps this Court be "consistent with" *Bourne Valley*, it is necessary to identify the statutes that *Bourne Valley* seemingly struck down.[13] *Bourne Valley* interpreted and struck down Chapter 116's statutory "notice scheme," focusing on three statutes: NRS §§ 116.31163, 116.311635,[14] and 116.31168. *Bourne Valley*, 832 F.3d at 1156, 1160. The 1993 versions of these laws were construed in *Bourne Valley*; they were statutory amendments that Nevada's Legislature made to Chapter 116 in 1993. In *Bourne Valley*'s estimation, the 1993 versions of these provisions were unconstitutional. *Id.* at 1156, 1159. Hence,

---

signatures submitted by the June deadline set in the prior version of the statute.") (citing *We the People Nev. ex rel. Angle v. Miller*, 192 P.3d 1166 (Nev. 2008)); *Bohannon v. Johnson Food Equip., Inc.*, No. 5:07–cv–00123–JMM, 2009 WL 1663431, at *1 (E.D. Ark. June 15, 2009) (following Arkansas principle that unconstitutional statute is treated as though it had never been passed) (internal citations omitted).
[12] *Id.*
[13] Though *Bourne Valley* struck down 116's "notice scheme," it did not explicitly identify the provisions that constitute this "scheme." *Bourne Valley*, 832 F.3d at 1156-59. Nevertheless, the majority opinion reviewed 116.31163, 116.311635, and 116.31168. *Id.* at 1159. It also labelled 116.31163 and 116.311635 as "express notice provisions." *Id.*
[14] *Bourne Valley* claimed that it interpreted "section 116.31165." *Bourne Valley*, 832 F.3d at 1159. No such statute exists. There is, however, a provision that is enumerated "116.311635." That *Bourne Valley* professedly construed a non-existent statute is unsurprising, likely attributable to its belief that Nevada's law was "peculiar" and "strange." *Id.* at 1158.

- 8 -

**KIM GILBERT EBRON**
7625 DEAN MARTIN DRIVE, SUITE 110
LAS VEGAS, NEVADA 89139
(702) 485-3300 FAX (702) 485-3301

1  pursuant to the Return Doctrine, this Court should "return" 116's "notice scheme" to its pre-1993

2  version, to the "notice scheme" that existed in 1991.

3        Indeed, Chapter 116 was originally enacted in 1991. Its "notice scheme" was

4  predominantly located in 116.31168,[15] which in 1991 provided:

> The provisions of NRS 107.090 apply to the foreclosure of an association's lien as if a deed of trust were being foreclosed. The request must identify the lien by stating the names of the unit's owner and the common-interest community. ***The association must also give reasonable notice of its intent to foreclose to all holders of liens in the unit who are known to it.***

9  AB 221, 1991 Nev. Stat., ch.245, § 104, at 570-71 (codified as NRS § 116.31168) (emphasis

10  added). Neither 116.31163 nor 116.311635 existed in 1991; they were added in 1993 as

11  *amendments*. Another 1993 *amendment* was the deletion of the following words from 116.31168,

12  "The association must also give reasonable notice of its intent to foreclose to all holders of liens

13  in the unit who are known to it." AB 612, 1993 Nev. Stat., ch.573, §40, at 2373. A "return" to the

14  1991 "notice scheme" will be a "return" to this language, a "return" to the requirement that an

15  association "must also give reasonable notice of its intent to foreclose to all holders of liens in the

16  unit who are known to it." It will be a "return" to a constitutional law.

17        Specifically, *Bourne Valley* determined that the 1993 "notice scheme" was unconstitutional

18  because it: (i) "required a homeowners' association to alert a mortgage lender that it intended to

19  foreclose only if the lender had affirmatively requested notice" and (ii) "shifted the burden of

20  ensuring adequate notice from the foreclosing homeowners' association to a mortgage lender."

21  *Bourne Valley*, 832 F.3d at 1156, 1159. *Bourne Valley* struck down the 1993 "notice scheme"

22  because it was supposedly "opt-in" and shifted the burden of providing notice.

23        Contrastingly, the 1991 "notice scheme" does not suffer the deficiencies complained of by

24  the majority in *Bourne Valley*. The 1991 version does not require an association to provide notice

25  "that it intended to foreclose only if the lender" has requested notice; the 1991 "notice scheme" is

26  not "opt-in." Instead, the 1991 version requires associations to provide notice to "*all* holders of

---

[15] The 1991 provisions regarding the Notice of Default and Notice of Sale were found in NRS 116.31162.

- 9 -

liens in the unit," as long as those holders "are known to" an association. A "holder" is "known to" an association by virtue of Nevada's recording laws.[16] Under these laws, if a "holder[] of liens in the unit" records its interest, then that holder is "known to" an association, thereby entitling it to notice—irrespective of whether it has requested notice.[17] This is so because "every instrument of writing . . . whereby any real property may be affected . . . operate[s] as notice to third persons"[18] because it "impart[s] notice to all persons of the contents thereof; and subsequent purchasers and mortgagees shall be deemed to purchase and take with notice."[19] In sum, the 1991 "notice scheme" is not "opt-in" according to the *Bourne Valley* analysis.

Similarly, the 1991 version—unlike the way that the 1993 "notice scheme" was depicted in *Bourne Valley*—does not shift "the burden of ensuring adequate notice from the foreclosing homeowners' association to a mortgage lender." *Bourne Valley*, 832 F.3d at 1159. To the contrary, the burden of providing notice is on associations, which "*must*" provide notice to "*all* holders of liens in the unit who are known to [them]." The 1991 "notice scheme" imposes the burden of providing notice not on banks, but on associations. In doing so, the 1991 "notice scheme" is not an allegedly unconstitutional regime that "'prospectively shift[s] the entire burden of ensuring adequate notice to an interested property owner regardless of the circumstances.'" *Id.* at 1158 (quoting *Small Engine Shop, Inc. v. Cascio*, 878 F.2d 883, 884 (5th Cir. 1989)). The 1991 "notice scheme" maintains, rather than shifts, this burden. As a result, a "return" to the 1991 "notice scheme"—the version that existed before the 1993 statutory amendments—will be a "return" to a constitutional law.

Such a "return" is "consistent with" *Bourne Valley* because it effectuates *Bourne Valley*'s

---

[16] NRS § 111.315; NRS § 111.320; *All Am. Van & Storage, Inc. v. DeLuca Realty, Inc.*, 592 P.2d 951, 952 (Nev. 1979) ("All American, by reason of the knowledge imputed to it pursuant to the recording statutes, must be deemed to have had notice of the recorded encumbrance."); *White v. Moore*, 448 P.2d 35, 36 (Nev. 1968) ("Even if the agreement of October 1965 was a valid and binding contract between the parties, the appellants by reason of the knowledge imputed to them by virtue of our recording statutes are deemed to have had knowledge of the provisions of the Richfield encumbrance of record, and they are not now permitted to disclaim that knowledge.").
[17] *Id.*
[18] NRS § 111.315.
[19] NRS § 111.320.

- 10 -

conclusion that the 1993 "notice scheme" is unconstitutional. More precisely, **the Return Doctrine is "consistent with" *Bourne Valley* because it implements the legal consequences that are caused by *Bourne Valley*'s declaration of unconstitutionality**. In fact, *Bourne Valley*'s determination—that the 1993 "notice scheme" was unconstitutional—has several repercussions. **First**, it means that the 1993 versions of 116.31163, 116.311635, and 116.31168 were incapable of amending the 1991 "notice scheme"; unconstitutional statutory amendments cannot "amend" that which preceded them. As such, the 1991 "notice scheme" remains intact, unchanged by unconstitutional amendments that lacked the force and effect of law. The Return Doctrine perpetuates this principle about unconstitutional statutory amendments. **Second**, *Bourne Valley*'s decree of unconstitutionality means that Nevada's Legislature lacked the power to enact the 1993 versions of 116.31163, 116.311635, and 116.31168. Legislatures cannot make unconstitutional statutory amendments; their legislative powers are confined to codifying constitutional amendments. Thus, the 1991 "notice scheme" remains intact, unfazed by the Nevada Legislature's attempt in 1993 to exert power it does not have (i.e. the power to enact unconstitutional amendments). The Return Doctrine perpetuates this principle concerning legislative power. It also justifies granting SFR's Motion for Partial Summary Judgment, and determining that under the Return Doctrine, NRS Chapter 116's "notice scheme" "returns" to its 1991 version.

Ultimately, the Return Doctrine is "consistent with" *Bourne Valley* because it implements *Bourne Valley*'s declaration of unconstitutionality by "returning" Chapter 116's "notice scheme" to its 1991 version. Returning to the 1991 version is the natural consequence of—and hence "consistent with"—*Bourne Valley*'s conclusion that the 1993 "notice scheme" is unconstitutional; if the 1993 "notice scheme" was unconstitutional, then it was incapable of amending the 1991 version. As Nevada's Supreme Court has explained, "when a statute is declared unconstitutional, it has no effect and the prior governing statute is revived." *We the People*, 192 P.3d at 1176. Other state courts, the Ninth Circuit, and the United States Supreme Court agree with Nevada's Supreme Court. At bottom, the Return Doctrine shows this Court how to be "consistent with" *Bourne Valley*.

### C. The Return Doctrine Defeats the Bank's Twentieth Affirmative Defense.

The Return Doctrine not only helps this Court be "consistent with" *Bourne Valley*, but it

- 11 -

also defeats the Bank's Twentieth Affirmative Defense. ECF No. 20, 10:9-14 ("Due Process—Facially Unconstitutional Provisions"). The Bank will likely assert that *Bourne Valley* is dispositive, entitling it to prevail on its affirmative defense that "NRS Chapter 116 is facially unconstitutional because its 'opt-in' notice provisions do not mandate reasonable and affirmative steps be taken to give actual notice . . . ." *Id.* at 10:17-18. It will probably opine that this defense is bolstered by *Bourne Valley*'s determination that the 1993 "'opt-in' notice scheme facially violated mortgage lenders' constitutional due process rights." *Bourne Valley*, 832 F.3d at 1160. Yet, *Bourne Valley*'s decree of unconstitutionality is not a path to victory for the Bank, or a validation of its Twentieth Affirmative Defense. Rather, the Return Doctrine establishes that when *Bourne Valley* struck down the 1993 "notice scheme," the law "returned" to its 1991 version; the Bank's ability to raise its Twentieth Affirmative Defense hinges on whether the 1991 "notice scheme" is constitutional, whether it violated the Bank's "due process rights."

In other words, the Bank insists that SFR's Counterclaim is deficient because the Bank's "due process rights" were allegedly violated. ECF No. 20, 10:9-14. This position, however, fails because the 1991 "notice scheme" did not violate the Bank's "due process rights." Under the 1991 "notice scheme," if the Bank was a "holder[] of liens in the unit who [was] known to" the Association, then the Association was required to "give reasonable notice of its intent to foreclose to" the Bank. Here, the Bank recorded its alleged interest in the property before the Association's sale. Consequently, the Bank was "known to" the Association. Because the Bank was "known to" the Association, the Association "*must* give reasonable notice of its intent to foreclose" to the Bank, regardless of whether notice was requested. The purported constitutional deficiencies that tainted the 1993 "notice scheme" are absent from the 1991 "notice scheme." And so, the 1991 "notice scheme"—unlike the 1993 version that was struck down by *Bourne Valley*—did not "facially violate[] [the Bank's] constitutional due process rights." *Bourne Valley*, 832 F.3d at 1160. All told, the Return Doctrine, which has been applied by Nevada and other states across the country, defeats the Bank's Twentieth Affirmative Defense.[20]

---

[20] This footnote contains citations to state court decisions, which have applied the Return Doctrine. **Montana**- *Clark Fork Coal. v. Tubbs*, 380 P.3d 771, 782 (Mont. 2016) ("Thus, under Montana

- 12 -

law, when an amended statute is invalidated the statute is left in the same position that it was in before the amendment was introduced."); **Illinois**-*Cookson v. Price*, 941 N.E.2d 162, 164 (Ill. 2010) ("The effect of declaring a statute unconstitutional is to revert to the statute as it existed before the amendment."); *Knight v. Van Matre Rehab. Ctr., LLC*, 936 N.E.2d 1152, 1155 (Ill. App. Ct. 2010) ("On February 4, 2010, our supreme court, in addressing the constitutionality of the statute limiting the recovery of noneconomic damages in a medical malpractice action, held Public Act 94–677 'invalid and void in its entirety.' As a result, the parts of section 2–622 that Public Act 94–677 amended reverted to what they were prior to August 25, 2005.") (internal citations omitted); **Alabama**- *King v. Campbell*, 988 So.2d 969, 980 n.8 (Ala. 2007) ("A determination that the 2006 Act is unconstitutional in its entirety would result in a reversion to the 1999 Act, pursuant to which Woodruff now holds office."); **South Dakota**- *Homestake Mining Co. v. South Dakota Subsequent Injury Fund*, 644 N.W.2d 612, 618 (S.D. 2002) ("When a law is found unconstitutional, it is void from its inception and the prior law remains in effect. 'No law can be changed or repealed by a subsequent act which is void because unconstitutional.'") (internal citations omitted); **North Dakota**- *Hoff v. Berg*, 595 N.W.2d 285, 292 (N.D. 1999) ("When legislation 'modify[ing] an existing statute [ ] is declared unconstitutional, it is a nullity and cannot affect the existing statute in any manner. Rather, the extant statute remains operative without regard to the unsuccessful and invalid legislation.'") (quoting *State v. Clark,* 367 N.W.2d 168, 169 (N.D. 1985); **Nebraska**- *County Cork, Inc. v. Nebraska Liquor Control Comm'n*, 550 N.W.2d 913, 916 (Neb. 1996) ("When an amendatory act is invalid, the previous statute on the subject remains in full force and effect."); **Louisiana**- *Louisiana Republican Party v. Foster*, 674 So.2d 225, 233-34 (La. 1996) ("However, this court has noted that an unconstitutional act which purports to amend a prior statute cannot accomplish that objective, and, the 'unconstitutional act, having no effect, can amend nothing. Instead, the applicable law is provided by the statute as worded prior to the unconstitutional amendment.'") (internal citations omitted); *Marting v. Nebraska Liquor Control Comm'n*, 548 N.W.2d 326, 330 (Neb. 1996) ("When an amendatory act is invalid, the previous statute on the subject remains in full force and effect."); **Wyoming**-*Allhusen v. State*, 898 P.2d 878, 890 (Wyo. 1995) ("It, therefore, is our intention, in declaring WYO.STAT. §§ 33–38–110, –106, –103 (Supp.1994) unconstitutional and of no effect, to reinstate the provisions as they existed prior to the 1993 amendments."); **New York**- *Town of Islip v. Paliotti*, 196 A.D.2d 648, 649 (N.Y. App. Div. 1993) ("The practical effect of the Federal courts' decisions striking down the 1979 amendments as being unconstitutional, therefore, was to restore the law to its pre–1979 status.") (internal citations omitted); **Oklahoma**- *Ethics Comm'n of Oklahoma v. Cullison*, 850 P.2d 1069, 1078 (Okla. 1993) ("When an unconstitutional statute repeals a former statute the earlier statute is deemed unaffected by the void repealing enactment."); **Kentucky**- *Clay v. Terrill*, 670 S.W.2d 492, 493 (Ky. 1984) ("An unconstitutional act is not an immunity; nor can it operate to supersede any existing valid law. The effect of an invalid law is to leave the law as it existed prior to the adoption of the new bill.") (internal citations omitted); **California**- *Valdes v. Cory*, 189 Cal. Rptr. 212, 227 (Cal. Ct. App. 1983) ("First, the constitutional invalidity of amendatory legislation does not affect the validity of preceding enactments."); **Hawaii**- *State v. Bloss*, 637 P.2d 1116, 1130 (Haw. 1982) ("It is the general rule that where an act purporting to amend and re-enact an existing statute is void, the original statute remains in force."); **Tennessee**- *Leech v. Am. Booksellers Ass'n, Inc.*, 582 S.W.2d 738, 740 (Tenn. 1979) ("We declare the entire Act void. However, this does not leave Tennessee without a criminal obscenity law. An unconstitutional act that purports to supersede or repeal an existing law is ineffective to do so, since a void law has no force and effect. The result is that the prior obscenity law, 1974 Tenn.Pub.Acts, ch. 510, as amended, is in full force and effect.") (internal citations omitted); *State v. Dixon*, 530 S.W.2d 73, 74 (Tenn. 1975) ("An unconstitutional act designed to amend or supersede an existing law does

- 13 -

not repeal or change the former valid act but leaves it in full force and effect."); **Iowa**- *State v. Books*, 225 N.W.2d 322, 325 (Iowa 1975) ("When a statute is amended and only the amendment is constitutionally defective, the amendment is stricken while the statute as originally enacted remains unaffected."); *Dee-El Garage, Inc. v. Korzen*, 289 N.E.2d 431, 436 (Ill. 1972) ("The effect of enacting an invalid amendment to a statute is to leave the law in force as it was prior to the adoption of the amendment."); *San Ann Tobacco Co., Inc. v. Hamm*, 217 So.2d 803, 810 (Ala. 1968) ("It appears to be uniformly held that where there is a valid act and an attempted but unconstitutional amendment to it, the original act is not affected, but remains in full force and effect."); **Washington**- *Boeing Co. v. State*, 442 P.2d 970, 974 (Wash. 1968) ("It is the rule that an invalid statute is a nullity. It is as inoperative as if it had never been passed. The natural effect of this rule is that the invalidity of a statute leaves the law as it stood prior to the enactment of the invalid statute.") (internal citations omitted); **South Carolina**- *State ex rel. Thornton v. Wannamaker*, 150 S.E.2d 607, 609-10 (S.C. 1966) ("For, assuming the unconstitutionality of the 1964 amendment, under an equally well established legal principle, Section 23—313, as it originally stood before amendment, would continue in effect and require the filing of a nominating petition for State Treasurer at least ninety days before the election."); **Oregon**- *State ex rel. Musa v. Minear,* 401 P.2d 36, 39 (Or. 1965) ("The declaration of the unconstitutionality of ORS 326.005(1) (Oregon Laws 1961, ch. 624, § 1) automatically reinstates the repealed statute, ORS 326.010 (last enacted in Oregon Laws 1947, ch. 253)."); **Texas**- *Rowland v. State*, 311 S.W.2d 831, 832 (Tex. Crim. App. 1957) ("It is the general rule that an invalid or unconstitutional act cannot repeal a valid statute. . . . Further, where an amendment to an act is declared invalid the original act remains in full force and effect.") (internal citations omitted); **Indiana**- *Caesar v. DeVault*, 141 N.E.2d 338, 343 (Ind. 1957) ("In view of the conclusion we have come to in this opinion that the Acts of 1943, 1945 and 1949 herein dealt with are unconstitutional, it necessarily follows that the number of justices of the peace permitted in Calumet Township, Lake County, Indiana, is determined by the Acts of 1927, supra, ch. 155, § 1, which is obviously generally applicable throughout the state and prescribes the limit of such number to be two."); **North Carolina**- *Bd. of Managers of James Walker Mem'l Hosp. v. City of Wilmington*, 74 S.E.2d 749, 758 (N.C. 1953) ("Therefore Ch. 23, Private Laws 1881 and Ch. 181, private laws, 1881; Ch. 12, Private Laws 1901; Ch. 38, Private Laws 1907 and Ch. 66, Public-Local Laws 1915, have not been repealed or modified or in any way affected by the laws enacted in 1937, 1939 and 1951 which are all unconstitutional."); **Ohio**- *McClain v. All States Life Ins. Co.*, 80 N.E.2d 815, 818 (Ohio Ct. App. 1948) ("Furthermore, if the entire act were unconstitutional, then the repealing section would be inoperative, thereby leaving the former statute in full force and effect."); **Minnesota**- *State v. One Oldsmobile Two-Door Sedan, Model 1946*, 35 N.W.2d 525, 530 (Minn. 1948) ("If, as appellants contend, the 1945 statute is unconstitutional, it is ineffective for any purpose, including that of repealing the 1941 statute. An unconstitutional statute, being void and inoperative, cannot repeal or in any way affect an existing one. . . . Hence, if we held the 1945 statute unconstitutional, the 1941 statute, which it attempted to repeal, would remain in full force and effect."); **Arkansas**- *Morgan v. Cook*, 202 S.W.2d 355, 358 (Ark. 1947) ("The general rule is that an unconstitutional statute is a nullity and in legal contemplation is as inoperative as if it had never been passed. . . . [i]f the amendatory act was invalid, it left the former act unimpaired."); **Missouri**- *Williams Lumber & Mfg. Co. v. Ginsburg*, 146 S.W.2d 604, 605 (Mo. 1940) ("The evident purpose in the enactment of House Bill 382 was to substitute a new section for the old one. We cannot say that the legislators intended to repeal the old section without enacting a new one in its place. In such circumstances, the rule is that, if the new section is unconstitutional, the repealing clause is likewise invalid and the old section remains in force."); **Idaho**- *Twin Falls Canal Co. v. Huff*, 76 P.2d 923, 928 (Idaho 1938) ("Even if some provisions of the statute were unconstitutional, the

- 14 -

### IV. CONCLUSION

For the foregoing reasons, this Court should grant SFR's Motion for Partial Summary Judgment. This Court should determine that under the Return Doctrine, NRS Chapter 116's "notice scheme" "returns" to its 1991 version—a "return" to a constitutional law that eliminates the Bank's Twentieth Affirmative Defense. *Bourne Valley* is simply not the end that the Bank so desperately seeks. Instead, it is a *return*.

DATED this 21st day of December, 2016.

**KIM GILBERT EBRON**

*/s/ Diana Cline Ebron*
DIANA CLINE EBRON, ESQ.
Nevada Bar No. 10580
JACQUELINE A. GILBERT, ESQ.
Nevada Bar No. 10593
KAREN L. HANKS, ESQ.
Nevada Bar No. 9578
7625 Dean Martin Drive, Suite 110
Las Vegas, NV 89139
*Attorneys for SFR Investments Pool 1, LLC*

---

court should not have dismissed the action but proceeded under the prior valid statute and such portion of the amendments as could be held valid. While this point was not passed on directly in *Bissett v. Pioneer Irr. Dist., supra*, nevertheless the authoritative holding that a previous valid statute is unaffected by an invalid amendment because of its unconstitutionality supports this line of procedure."); **Texas**- *State v. Standard Oil Co.*, 107 S.W.2d 550, 557 (Tex. 1937) ("Likewise, it has been held that where an amendment to an act has been declared invalid, the original Act remains in full force and effect."); **California**- *Miller v. Union Bank & Trust Co.*, 59 P.2d 1024, 1027 (Cal. 1936) ("Generally stated, the rule is that when discrimination or unconstitutionality results from a statutory amendment, as is the case here, it is the amendment which is invalid and not the original portions of the statute."); **Mississippi**- *Lawrence v. Mississippi State Tax Comm'n*, 137 So. 503, 505 (Miss. 1931) ("[i]f such act is unconstitutional, then section 11 of chapter 132, Laws of 1924, would remain in force as though the amendment had not been made . . . ."); **Maryland**- *Bangs v. Fey*, 152 A. 508, 511 (Md. 1930) ("For the reasons herein stated, we hold the Acts of 1929, chapter 578, to be unconstitutional, from which it follows that sections 31 and 32 of article 33 of the Code, as they existed prior to the act of 1929, shall have such effect as they had prior to that Act."); **Massachusetts**- *In re Op. of the Justices*, 168 N.E. 536, 538 (Mass. 1929) ("It is a general principle that, when a statute whereby an attempt has been made to amend previously existing statutes has been declared unconstitutional, the previously existing statutes survive untarnished by the ineffectual attempt to change them."); **Michigan**- *McLellan v. Stein*, 201 N.W. 209, 213 (Mich. 1924) ("We are therefore constrained to hold the law invalid, which leaves all preceding laws upon that subject in force.").

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of December 2016, pursuant to FRCP 5, I served, via the CMECF electronic filing system, the foregoing **SFR INVESTMENTS POOL 1, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING A PURE ISSUE OF LAW: APPLICATION OF THE RETURN DOCTRINE POST-*BOURNE VALLEY*** to the following parties listed below:

Melanie D. Morgan
Allison R. Schmidt
Darren T. Brenner
Tenesa S. Scaturro
Akerman LLP
1600 Town Center Drive, Suite 330
Las Vegas, NV 89144
(702) 634-5000
Email: melanie.morgan@akerman.com
Email: allison.schmidt@akerman.com
Email: darren.brenner@akerman.com
Email: tenesa.scaturro @akerman.com
*Counsel for BANK OF AMERICA, N.A., successor by merger to BAC Home Loans Servicing, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP,*

Robert L English
American Family Mutual Insurance Company
6750 Via Austi Parkway
Suite 310
Las Vegas, NV 89119
702-733-4989 Ext. 51575
Fax: 877-888-1396
Email: renglish@amfam.com

*Counsel for Desert Pine Villas Homeowners Association*

Steven T. Loizzi , Jr.
Alessi & Koenig, LLC
9500 West Flamingo Road, Suite 205
Las Vegas, NV 89147-5721
(702) 222-4033
Fax: (702) 222-4043
Email: steve@alessikoenig.com
*Counsel for Alessi & Koenig, LLC*

              */s/ Diana Cline Ebron*
              An Employee of Kim Gilbert Ebron