UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF AMERICA, N.A., | Case No. 2:16-CV-725 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| DESERT PINES VILLAS HOMEOWNERS ASSOCIATION, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff/counter-defendant Bank of America, N.A.'s ("BANA") motion for summary judgment.[1] (ECF No. 41). SFR Investments Pool 1, LLC ("SFR") responded (ECF No. 86), to which BANA replied (ECF No. 89).

Also before this court is SFR's motion for summary judgment (ECF No. 79), joined by Desert Pine Villa Homeowners Association (the "HOA") (ECF No. 80). BANA responded (ECF No. 85), to which SFR replied (ECF No. 90).

Also before this court is SFR's motion for partial summary judgment regarding a pure issue of law. (ECF No. 69). BANA responded (ECF No. 71), to which SFR replied (ECF No. 74).

Also before this court is SFR's motion to certify a question of law to the Nevada Supreme Court. (ECF No. 62). BANA filed a response (ECF No. 65), to which SFR replied (ECF No. 67).

**I.      Facts**

This case involves a dispute over real property located at 3928 Lazy Pine Street, #103, Las Vegas, Nevada 89108 (the "property"). (ECF No. 41 at 3). On January 10, 2005, Janet Robitaille

---

[1] The court uses the term BANA, but plaintiff's full name is as follows: Bank of America, N.A., successor by merger to BANA Home Loans Servicing, LP, formerly known as Countrywide Home Loans Servicing, LP.

obtained a loan in the amount of $170,895.00 to purchase the property, which was secured by a deed of trust recorded on January 28, 2005. (*Id*.).

The deed of trust was "assigned to [BANA] via an assignment of deed of trust recorded on October 7, 2011." (*Id*.).

On September 16, 2011, defendant Alessi & Koenig, LLC ("Alessi"), acting on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $1,776.00. (*Id.*). On March 16, 2012, Alessi recorded a notice of default and election to sell to satisfy the delinquent assessment lien, stating an amount due of $3,751.00. (*Id*.).

On April 11, 2012, BANA requested a ledger from Alessi to identify the superpriority amount allegedly owed to the HOA. (ECF No. 41-7 at 6–7). Alessi did not identify the super-priority portion of the lien but reasserted the total amount due, $4,760.00. (*Id*. at 9–11). BANA calculated the superpriority amount to be $1,512.00 and tendered that amount to Alessi on May 3, 2012, which Alessi refused. (*Id*. at 14–16).

On November 5, 2012, Alessi recorded a notice of trustee's sale, stating an amount due of $5,888.00. (ECF No. 41 at 3). On December 5, 2012, SFR purchased the property at the foreclosure sale for $7,557. (*Id*. at 4). A foreclosure deed in favor of SFR was recorded on December 10, 2012. (*Id*.).

On April 1, 2016, BANA filed the underlying complaint, alleging four causes of action: (1) quiet title/declaratory judgment against all defendants; (2) breach of NRS 116.1113 against the HOA and Alessi; (3) wrongful foreclosure against the HOA and Alessi; and (4) injunctive relief against SFR. (ECF No. 1).

In the instant motions, BANA moves for summary judgment *inter alia* regarding quiet title and argues: (1) its tender was sufficient and should not have been rejected; (2) the HOA lien statute is facially unconstitutional, and "any factual issue[s] concerning actual notice [are] irrelevant"; (3) the Supremacy Clause bars the foreclosure sale; (4) the *SFR Investments* decision should not be applied retroactively; (5) the foreclosure sale was commercially unreasonable; and (6) SFR was not a *bona fide* purchaser for value. (ECF Nos. 41 at 11, 85).

Conversely, SFR moves for summary judgment regarding quiet title and argues the court should sever the relevant subsection of NRS chapter 116 (ECF Nos. 79 and 90), for partial summary judgment regarding a pure issue of law; that the court apply the "return doctrine" to NRS 116.31163, 116.311635, and 116.31168 (ECF No. 69); and to certify a question of law to the Nevada Supreme Court (ECF No. 62).

**II.     Legal Standards**

    **A.     Certify question of law to the Nevada Supreme Court**

The Nevada Rules of Appellate Procedure provide that the Supreme Court of Nevada has the power to answer "questions of [state] law . . . which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of [Nevada]." Nev. R. App. P. 5(a).

The Nevada Supreme Court "may answer questions of law certified [] by a federal court when (1) [the] answers to the certified questions may be determinative of part of the federal case, (2) there is no clearly controlling Nevada precedent, and (3) the answers to the certified questions will help settle important questions of law. *See, e.g.*, *Hartford Fire Ins. Co. v. Tr. of Const. Indus.*, 208 P.3d 884, 888 (Nev. 2009).

Where the question does not impact the merits of a claim pending before the certifying court, the question should not be certified to the Supreme Court. *See* Nev. R. App. P. 5(a) (requiring that certified question be "determinative"); *see also Volvo Cars of N. Am., Inc. v. Ricci*, 137 P.3d 1161, 1164 (Nev. 2006) (declining to answer certified questions where "answers to the questions posed [] would not 'be determinative' of any part of the case"). "The certification procedure is reserved for state law questions that present significant issues, including those with important public policy ramifications, and that have not yet been resolved by the state courts." *Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003).

Federal courts have discretion to certify questions of state law. *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). "Resort to certification is not mandatory where state law is unclear on a particular issue." *Carolina Cas. Ins. Co. v. McGhan*, 572 F. Supp. 2d 1222, 1225 (D. Nev. 2008) (citing *Lehman Bros.*, 416 U.S. at 390–91). Generally, "[w]hen a decision turns on applicable

state law and the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Aetna Cas. & Sur. Co. v. Sheft*, 989 F.2d 1105, 1108 (9th Cir. 1993).

Further, a federal court may decline to certify a question where controlling precedent is available for guidance. *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1041 (9th Cir. 2014); *see also Kehoe v. Aurora Loan Servs., LLC*, No. 3:10-cv-256-RCJ-RAM; 2010 WL 4286331, at *11 (D. Nev. Oct. 20, 2010) (declining to certify question to Nevada Supreme Court where statutory language was sufficiently clear for the court to apply).

Finally, a party must show "particularly compelling reasons" for certification when that party first requests it after losing on an issue. *Complaint of McLinn*, 744 F.2d 677, 681 (9th Cir. 1984) ("Ordinarily such a movant should not be allowed a second chance at victory when, as here, the district court employed a reasonable interpretation of state law.").

### B. Motion for Summary Judgment

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to

its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

James C. Mahan
U.S. District Judge

### III. Discussion

#### A. Certify a question of law to the Nevada Supreme Court

SFR requests that the court certify the following question to the Nevada Supreme Court: "Whether NRS § 116.31168(1)'s incorporation of NRS § 107.090 requires homeowners' associations to provide notices of default to banks even when a bank does not request notice?" (ECF No. 62 at 2).

The court declines to certify this question as controlling precedent is available for guidance. The Ninth Circuit, in *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016)—which SFR cites to in its motion—explicitly answered SFR's exact question in the negative. More specifically, the Ninth Circuit held, in relevant part, as follows:

> Bourne Valley argues that Nevada Revised Statute section 116.31168(1), which incorporated section 107.090, mandated actual notice to mortgage lenders whose rights are subordinate to a homeowners' association super priority lien. . . . According to Bourne Valley, this incorporation of section 107.090 means that foreclosing homeowners' associations were required to provide notice to mortgage lenders even absent a request.
> . . . .
> If section 116.31168(1)'s incorporation of section 107.090 were to have required homeowners' associations to provide notice of default to mortgage lenders even absent a request, section 116.31163 and section 116.31165 would have been meaningless. We reject Bourne Valley's argument.

*Bourne Valley Court Trust*, 832 F.3d at 1159.

Accordingly, the court will deny SFR's motion to certify its question to the Nevada Supreme Court.

#### B. Breach of NRS 116.1113 against the HOA and Alessi, wrongful foreclosure against the HOA and Alessi, and injunctive relief against SFR

As an initial matter, the court dismisses, without prejudice, the above-identified claims of BANA's complaint. (ECF No. 1).

BANA's claims of breach of NRS 116.1113 against the HOA and Alessi and wrongful foreclosure against the HOA and Alessi are dismissed without prejudice for failure to mediate pursuant to NRS 38.330. *See* Nev. Rev. Stat. § 38.330(1); *McKnight Family, L.L.P. v. Adept Mgmt.*, 310 P.3d 555 (Nev. 2013). Subsection (1) of NRS 38.310 sets forth prerequisites for commencing a civil action and provides, in relevant part:

> No civil action based upon a claim relating to [t]he interpretation, application or enforcement of any covenants, conditions or restrictions applicable to residential property . . . or [t]he procedures used for increasing, decreasing or imposing additional assessments upon residential property, may be commenced in any court in this State unless the action has been submitted to mediation.

Nev. Rev. Stat. § 38.310(1). Subsection (2) continues by stating that a "court shall dismiss any civil action which is commenced in violation of the provisions of subsection 1." Nev. Rev. Stat. § 38.310(2).

"A wrongful foreclosure claim challenges the authority behind the foreclosure, not the foreclosure act itself." *McKnight Family, L.L.P.*, 310 P.3d at 559 (citing *Collins v. Union Fed. Sav. & Loan*, 662 P.2d 610, 623 (Nev. 1983)). "The material issue in a wrongful foreclosure claim is whether 'the trustor was in default when the power of sale was exercised.'" *Turbay v. Bank of Am., N.A.*, No. 2:12-cv-01367-JCM-PAL; 2013 WL 1145212, at *4 (quoting *Collins*, 662 P.2d at 623). "Deciding a wrongful foreclosure claim against a homeowners' association involves interpreting covenants, conditions or restrictions applicable to residential property." *McKnight Family, L.L.P.*, 310 P.3d at 559. "This type of interpretation falls under NRS 38.310." *Id.* Additionally, NRS 38.310 applies to laws "contain[ing] conditions and restrictions applicable to residential property." *Id.* at 558.

Similarly, BANA's NRS 116.1113 claim alleges statutory violations, which require an interpretation of the regulations and statutes that contained conditions and restrictions applicable to the property so as to fall within the scope of NRS 38.310.

While NRS 38.330(1) explains the procedure for mediation,[2] NRS 38.310 is clear in providing that no civil action may be commenced "unless the action has been submitted to mediation." Specifically, subsection (1) goes on to state in relevant part:

> If the parties participate in mediation and an agreement is not obtained, any party may commence a civil action in the proper court concerning the claim that was submitted to mediation. **Any complaint filed in such an action must contain a sworn statement indicating that the issues addressed in the complaint have been mediated** pursuant to the provisions of NRS 38.300 to 38.360, inclusive, but an agreement was not obtained.

---

[2] Subsection (1) of NRS 38.330 states that "[u]nless otherwise provided by an agreement of the parties, mediation must be completed within 60 days after the filing of the written claim." Nev. Rev. Stat. § 38.330(1).

Nev. Rev. Stat. § 38.330(1) (emphasis added). Nothing in NRS 38.330 provides that NRED's failure to appoint a mediator within 60 days constitutes exhaustion, nor does the statute place the burden on NRED to complete mediation within a specified period of time. Thus, BANA has not exhausted its administrative remedies and must mediate certain claims prior to initiating an action in court

Further, NRS 38.350 expressly tolls the statute of limitations applicable to BANA's claims that are subject to mediation under NRS 38.310. Specifically, NRS 38.350 provides that "[a]ny statute of limitations applicable to a claim described in NRS 38.310 is tolled from the time the claim is submitted to mediation . . . until the conclusion of mediation . . . of the claim and the period for vacating the award has expired." Nev. Rev. Stat. § 38.350. Therefore, BANA's claims are not prejudiced by the statute's requirement that the parties participate in mediation prior to initiating an action in court.

Here, BANA's complaint does not allege that mediation under NRS 38.330 has been completed. (ECF No. 1 at 3). Specifically, the complaint does not contain a sworn statement indicating that the issues set forth in the complaint have been mediated, but no agreement was obtained. *See* Nev. Rev. Stat. § 38.330(1). Consequently, BANA must first submit its breach of NRS 116.1113 claim and wrongful foreclosure claim to mediation pursuant to NRS 33.310 before proceeding with such claims in this court. *See e.g.*, *U.S. Bank, N.A. v. Woodchase Condo. Homeowners Ass'n*, No. 2:15-cv-01153-APG-GWF, 2016 WL 1734085, at *2 (D. Nev. May 2, 2016); *Saticoy Bay, LLC Series 1702 Empire Mine v. Fed. Nat'l Mortg. Ass'n*, No. 2:14-cv-01975-KJD-NJK, 2015 WL 5709484, at *4 (D. Nev. Sept. 29, 2015). Therefore, BANA's breach of NRS 116.1113 and wrongful foreclosure claims against the HOA and Alessi will be dismissed as unexhausted, without prejudice.

BANA's claim for injunctive relief against SFR is also dismissed without prejudice because the court follows the well-settled rule that a claim for "injunctive relief" standing alone is not a cause of action. *See, e.g.*, *In re Wal–Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-cv-346-JCM-RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not

an independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").

### C. Quiet title [3]

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (internal quotation marks and citations omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the NRS gives an HOA a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investment Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

---

[3] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2012–13, when the events giving rise to this litigation occurred.

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Here, there are cross-motions for summary judgment—BANA and SFR both assert claims involving quiet title on the property. (ECF Nos. 41, 79).

*1. Rejected tender*

In the instant motion, BANA argues that its tender on May 3, 2012, to Alessi preserved the seniority of BANA's deed of trust. (ECF No. 41 at 4–6). BANA asserts that it "calculated the superpriority amount [to be] . . . $1,512.00 and tendered that amount to Alessi on May 3, 2012," which Alessi rejected. (ECF No. 41 at 3–4).

The court disagrees. BANA did not tender the amount sent forth in the notice of default, which stated an amount due of $3,751.00. (ECF No. 79-12). Rather, BANA tendered a lesser amount, specifically, $1,512.00. (ECF No. 41-7 at 14–16).

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

The superpriority lien portion, however, consists of "the last nine months of unpaid HOA dues ***and maintenance and nuisance-abatement charges***," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411 (emphasis added); *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of

unpaid assessments and certain charges specifically identified in § 116.31162."). BANA offered $1,512.00 based on its calculation of the nine months of unpaid HOA dues, without adequately accounting for the maintenance and nuisance-abatement charges. (ECF No. 41-7 at 14–16). Further, BANA fails to explain why it was appropriate to eliminate the other charges calculated in the ledger's superpriority total. (*Id.*); (ECF No. 41 at 4–6).

BANA merely presumed, without adequate support, that the amount set forth in the notice of default included more than the superpriority lien portion and that a lesser amount based on BANA's own calculations would be sufficient to preserve its interest in the property. *See generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale).

In response to plaintiff's April 11, 2012, letter, Alessi provided a statement to indicate an amount due of $4,760.00. (ECF No. 41-7 at 9). Rather than tendering the $4,760.00 due so as to preserve its interest in the property and then later seeking a refund of any difference, BANA elected to pay a lesser amount ($1,512.00) based on its unwarranted assumption that the amount stated in the notice included more than what was due. *See SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund). Had BANA paid the amount set forth in the notice of default ($4,760.00), the HOA's interest would have been subordinate to the first deed of trust. *See* Nev. Rev. Stat. § 116.31166(1).

After failing to use the legal remedies available to BANA to prevent the property from being sold to a third party—for example, seeking a temporary restraining order and preliminary injunction and filling a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—BANA now seeks to profit from its own failure to follow the rules set forth in the statutes. *See generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior*

*Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby.").

In presuming that an "offer" to pay constitutes a "tender" of payment, BANA cites to *Stone Hollow Ave. Trust v. Bank of Am., Nat'l Ass'n*, 382 P.3d 911 (Nev. 2016), for the proposition that an offer to pay the superpriority amount prior to the foreclosure sale preserves the lender's deed of trust. (ECF No. 41 at 5–8).

The *Stone Hollow* court, however, made no such holding. To the contrary, the *Stone Hollow* court held that "[w]hen rejection of a tender is unjustified, the tender is effective to discharge the lien." 382 P.3d at 911. BANA has not set forth any evidence as to tender in a sufficient amount.

Based on the foregoing, BANA has failed to sufficiently establish that it tendered a sufficient amount prior to the foreclosure sale so as to render Premier's title subject to BANA's deed of trust. Therefore, BANA's motion for summary judgment fails as to its tender argument.

### 2. *Issues concerning actual notice*

BANA argues that the HOA lien statute is facially unconstitutional because it does not mandate notice to deed of trust beneficiaries. (ECF No. 41 at 8–11). BANA further contends that any factual issues concerning actual notice is irrelevant pursuant to *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016) ("*Bourne Valley*"). (ECF No. 41 at 8–11).

The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58. The facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2). *See id.* at 1158. At issue is the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk. *See id.*

To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural

James C. Mahan
U.S. District Judge

- 12 -

protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). BANA has satisfied the first element as a deed of trust is a property interest under Nevada law. *See* Nev. Rev. Stat. § 107.020 *et seq.*; *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983) (stating that "a mortgagee possesses a substantial property interest that is significantly affected by a tax sale"). However, BANA fails on the second prong.

Due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

Here, adequate notice was given to the interested parties prior to extinguishing a property right. In fact, BANA acknowledges having received the notice of default. (ECF No. 41-7 at 6–7) ("This letter is written in response to your Notice of Default with regard to the HOA assessments purportedly owed on the above described real property."). As a result, the notice of trustee's sale was sufficient notice to cure any constitutional defect inherent in NRS 116.31163(2) because it put BANA on notice that its interest was subject to pendency of action and offered all of the required information. *See also Spears v. Spears*, 596 P.2d 210, 212 (Nev. 1979) ("The rule is well established that one who is not prejudiced by the operation of a statute cannot question its validity."). Further, BANA does not dispute receiving actual notice of the foreclosure sale, but merely that "actual notice does not change the analysis." (ECF No. 41 at 11). Therefore, BANA's motion for summary judgment fails regarding its notice argument.

### 3. Summary judgment under the Supremacy Clause

BANA next argues that the HOA lien statute cannot interfere with the federal mortgage insurance program or extinguish mortgage interests insured by the Federal Housing Administration ("FHA"). (ECF No. 41 at 12–18).

The single-family mortgage insurance program allows FHA to insure private loans, expanding the availability of mortgages to low-income individuals wishing to purchase homes. *See Sec'y of Hous. & Urban Dev. v. Sky Meadow Ass'n*, 117 F. Supp. 2d 970, 980–81 (C.D. Cal.

2000) (discussing program); *W Wash. & Sandhill Homeowners Ass'n v. Bank of Am., N.A.*, No. 2:13-cv-01845-GMN-GWF, 2014 WL 4798565, at *1 n.2 (D. Nev. Sept. 25, 2014) (same). If a borrower under this program defaults, the lender may foreclose on the property, convey title to the U.S. Department of Housing and Urban Development ("HUD"), and submit an insurance claim. 24 C.F.R. § 203.355. HUD's property disposition program generates funds to finance the program. *See* 24 C.F.R. § 291.1.

Allowing an HOA foreclosure to wipe out a first deed of trust on a federally-insured property thus interferes with the purposes of the FHA insurance program. Specifically, it hinders HUD's ability to recoup funds from insured properties. As this court previously stated in *Saticoy Bay LLC, Series 7342 Tanglewood Park v. SRMOF II 2012-1 Trust*, the court reads the foregoing precedent to indicate that a homeowners' association foreclosure sale under NRS 116.3116 may not extinguish a federally-insured loan. No. 2:13–cv–1199 JCM (VCF), 2015 WL 1990076, at *4 (D. Nev. Apr. 30, 2015).

However, the instant case is distinguishable from these cases in that, here, FHA is not a named party. No named party seeks to quiet title against FHA. (ECF Nos. 41 at 12–18, 86 at 10–11). Thus, this argument provides no support for BANA as the outcome of the instant case has no bearing on FHA's ability to quiet title. Therefore, BANA's motion for summary judgment argument fails as it relates to the Supremacy Clause argument.

    4. *Retroactive application*

BANA contends that *SFR Investments* should not be applied retroactively to extinguish the first deed of trust. (ECF No. 41 at 18–19).

The Nevada Supreme Court has since applied the *SFR Investments* holding in numerous cases that challenged pre-*SFR Investments* foreclosure sales. *See, e.g.*, *Centeno v. Mortg. Elec. Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC Series 8301 Boseck 228 v. Wells Fargo Bank, N.A.*, No. 64495, 2016 WL 1109295, at *1 (Nev. Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR Investments*, reasoning that "the district court's decision was based on an erroneous interpretation of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A.*, No. 65696, 2016 WL

315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "[t]he district court's conclusion of law contradicts our holding in *SFR Investments Pool 1 v. U.S. Bank*"). Thus, *SFR Investments* applies to this case.

### 5. *Commercial reasonability*

BANA contends that the sale was commercially unreasonable so judgment in favor of SFR is inappropriate because the sale of the property for 8% of its fair market value is grossly inadequate as a matter of law. (ECF No. 85 at 19). BANA further argues that the *Shadow Wood* court adopted the restatement approach, quoting the opinion as holding that: "while gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value." (*Id.*) (emphasis and alterations omitted).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[4]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its

---

[4] *See, e.g., Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Despite BANA's assertion to the contrary, the *Shadow Wood* court did not adopt the restatement. In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court adopted, or had the intention to adopt, the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section(s) of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Nevertheless, BANA fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale. BANA relies on its repeated assertion that it tendered the superpriority amount to show fraud, unfairness, or oppression. However, as discussed previously, the amount due on the date of BANA's tender was set forth in the letter from Alessi, specifically, $4,760.00. (ECF No. 41-7 at 9–11). Rather than tendering the noticed amount under protest so as to preserve its interest and then later seeking a refund of the difference in dispute, BANA chose to tender a lesser amount ($1,512), an amount it calculated to be the superpriority portion. (*Id*. at 14–16).

Accordingly, BANA's commercial reasonability argument fails as a matter of law as it failed to set forth evidence of fraud, unfairness, or oppression. *See, e.g.*, *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *2 n.2 (Nev. App. Apr. 17, 2017) ("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price."). Therefore, when Alessi completed the nonjudicial foreclosure sale, it extinguished the first deed of trust and title vested in SFR.

### 6. *Bona fide purchaser status*

Because the court has concluded that BANA failed to properly raise any equitable challenges to the foreclosure sale, the court need not address BANA's argument that SFR was not a *bona fide* purchaser for value. *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *3 n.3 (citing *Shadow Wood,* 366 P.3d at 1114).

### 7. *Severability of NRS chapter 116.*

In its opposition to summary judgment, SFR argues that the court should apply the principle of severability to NRS 116.31163, 116.311635, and 116.31168 so that NRS chapter 116 would be constitutionally consistent with *Bourne Valley*. (ECF No. 86 at 15–19). However, as this court has decided to grant summary judgment in SFR's favor on separate grounds, the court need not address SFR's severability argument because BANA received actual notice, thereby rendering this argument irrelevant.

In light of the foregoing, BANA has failed to show that it is entitled to judgment as a matter of law regarding its claim to quiet title. Indeed, SFR is entitled to judgment as a matter of law regarding quiet title.

**D.  SFR's motion for partial summary judgment**

SFR's motion for partial summary judgment urges the court to apply the "return doctrine," which would purportedly return NRS 116.31163, 116.311635, and 116.31168 to their 1991 pre-amendment state because *Bourne Valley* struck them down as unconstitutional. (ECF No. 69). However, the court need not address this issue because the plaintiff requested the lien amount (ECF No. 41-7 at 6–7) and paid a lesser amount in a self-calculated attempt to satisfy the lien (*Id.* at 14–16). Those actions render *Bourne Valley* irrelevant to the case at hand because, again, BANA had actual notice. *See id.*

Therefore, to issue an opinion at this time would be to issue an advisory opinion, which this court cannot do. *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (holding that "[t]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions"). Therefore, the court will deny SFR's motion for partial summary judgment.

**IV.  Conclusion**

In sum, and for the foregoing reasons, BANA's motion for summary judgment regarding quiet title is denied, SFR's motion for summary judgment regarding quiet title is granted, SFR's motion for partial summary judgment relating to the "return doctrine" is denied, and SFR's request to certify a question to the Nevada Supreme Court is denied.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that BANA's motion for summary judgment (ECF No. 41) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that SFR's motion for summary judgment (ECF No. 79) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that SFR's motion for partial summary judgment (ECF No. 69) be, and the same hereby is, DENIED.

1    IT IS FURTHER ORDERED that SFR's motion to certify a question of law to Nevada's Supreme Court (ECF No. 62) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that BANA's claims for breach of NRS 116.1113 and wrongful foreclosure against the HOA and Alessi (ECF No. 1) be, and the same hereby are, DISMISSED as unexhausted, without prejudice.

IT IS FURTHER ORDERED that BANA's claim for injunctive relief against SFR (ECF No. 1) be, and the same hereby is, DENIED without prejudice.

DATED July 6, 2017.

_____
UNITED STATES DISTRICT JUDGE